UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| F. NORRIS PIKE, ex rel. ESTATE OF : <br> CLAIRE S. PIKE, : <br>     Plaintiff, : <br> : <br>     v. : <br> : <br> KATHLEEN SEBELIUS, as Secretary of : <br> Department of Health and Human : <br> Services, MICHAEL GORMAN, Hearing : <br> Officer, Rhode Island Department of : <br> Human Services, and SOUTH COUNTY : <br> HEALTH AND REHABILITATION : <br> CENTER, INC., : <br>     Defendants. : | C.A. No. 13-392S |

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

    Plaintiff F. Norris Pike, ex rel. Estate of Claire S. Pike, ("Pike") initiated this federal action against federal Medicare, Rhode Island Medicaid and a skilled nursing facility in connection with medical expenses incurred by his mother ("Mrs. Pike") at the nursing facility during the last months of her life.

    Pike's primary claim targets hearing officer Michael Gorman ("Gorman") of the Rhode Island Department of Human Services ("DHS"). Invoking 42 U.S.C. § 1983, Pike charges that Gorman's use of the "Life Estate and Remainder Interest Tables"[1] ("Life Estate Table") to value a life estate transferred by Mrs. Pike, adversely affecting her Medicaid eligibility, constituted the

---

[1] The Life Estate Table at issue in this case is published on the website of the United States Social Security Administration in the Program Operations Manual System SI 01140.120, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0501140120 (last visited Nov. 8, 2013). It was originally adopted following notice and hearing on May 11, 1984. 49 Fed. Reg. 19997-8 (May 11, 1984) (codified at 26 C.F.R. § 20.2031-7). The Life Estate Table is also published in Section 3258.9 of the State Medicaid Manual. See Centers for Medicare and Medicaid Services ("CMS") State Medicaid Manual § 3258.9, available at http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Paper-Based-Manuals-Items/CMS021927.html?DLPage=1&DLSort=0&DLSortDir=ascending (last visited Nov. 8, 2013) ("State Medicaid Manual").

improper use of an irrational irrebuttable presumption violating her due process rights and contrary to the intent of the federal Medicaid (Title XIX) laws. He also alleges a due process deprivation because Gorman accepted a memorandum from DHS's legal counsel after the hearing without serving Pike or providing a rebuttal opportunity. In light of these claims arising under federal law, Pike asks this Court to exercise supplemental jurisdiction over his state law appeal from Gorman's adverse decision under the Rhode Island Administrative Procedures Act, R.I. Gen. Laws § 42-35-1, *et seq.* As remedies, he seeks declaratory and injunctive relief, as well as an order directing DHS to pay Defendant South County Health and Rehabilitation Center, Inc., ("Nursing Home") for some of the skilled nursing care provided to Mrs. Pike.

The basis for the Amended Complaint's joinder of Kathleen Sebelius as Secretary of Health and Human Services ("Secretary") is more opaque. Pike asserts that, "Medicare eligibility has not been fully determined" and "[i]t is unclear whether the 100 days of skilled nursing care . . . was fully paid." He adverts to the holding in a now-settled class action, Jimmo v. Sebelius, No. 5:11-cv-17, 2011 WL 5104355 (D. Vt. Oct. 25, 2011), but does not explain how, if at all, it relates to Mrs. Pike. He complains that the Nursing Home should have pressed a Medicare claim and that Rhode Island should be more aggressive in pursuing appeals of Medicare denials, though he does not lay out any relationship between this grumbling and his claim against the Secretary.

Both of the governmental defendants – Gorman as to the Rhode Island Medicaid claims and the Secretary as to the federal Medicare claims – have moved to dismiss. Gorman bases his motion on Fed. R. Civ. P. 12(b)(6), while the Secretary relies on Fed. R. Civ. P. 12(b)(1) and (6). These motions have been referred to me for report and recommendation.

An aside: in addition to the governmental defendants, Pike names and claims to have served the Nursing Home in which Mrs. Pike spent her last days; however, despite the passage of months, Pike has not filed proof of service on the Nursing Home, nor has the Nursing Home appeared or responded to the Amended Complaint. Rather than leave the claim against the Nursing Home in limbo, I address it *sua sponte* in this report and recommendation.

I. LAW OF MEDICARE AND MEDICAID

"There can be no doubt but that the statutes and provisions in question, involving the financing of Medicare and Medicaid, are among the most completely impenetrable texts within human experience." Rehab. Ass'n of Va., Inc. v. Kozlowski, 42 F.3d 1444, 1450 (4th Cir. 1994). Pike's frustration in maneuvering this maze is at the nub of this confusing case. Accordingly, I begin with a brief description of the intersection of Medicare and Medicaid reimbursement for skilled nursing care for the elderly.

Medicare, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395kkk, is a federally-run program, enacted in 1965, to provide financing for medical procedures for certain disabled individuals and people 65 years of age and older. 42 U.S.C. §§ 426(a), 1395c. Medicare has two parts, Part A and Part B. Part A, 42 U.S.C. §§ 1395c to 1395i–5, provides reimbursement for inpatient hospital care and related post-hospital, home health and hospice care. 42 U.S.C. § 1395d; see generally Kozlowski, 42 F.3d at 1446. Also enacted in 1965, Medicaid is based on Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, which is the federal statute providing for grants to the states for medical assistance programs. Title XIX established a federal-state cooperative cost-sharing program to provide necessary medical assistance to families and individuals with insufficient income and resources. Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 501 (1990); King ex rel. King v. Sullivan, 776 F. Supp. 645, 648

(D.R.I. 1991).  Like all states, Rhode Island's participation in the Medicaid program is optional, but since Rhode Island has elected to participate, it must comply with the Act's requirements. Harris v. McRae, 448 U.S. 297, 301 (1980).

As a program focused primarily on hospital reimbursement, Medicare provides limited coverage for the cost of staying in a skilled nursing facility.  "For the first 100 days after a qualifying hospital stay, Part A covers the costs of care in a skilled nursing facility ('SNF').  42 U.S.C. §§ 1395d(a), 1395x(h); 42 C.F.R. § 409.61."  Willowood of Great Barrington, Inc., v. Sebelius, 638 F. Supp. 2d 98, 104 (D. Mass. 2009).  Once that limit is exceeded, the patient with adequate income and resources must pay – either directly or through private insurance – to remain.  If the patient lacks income and resources, he or she may apply for Medicaid.

While leaving the states with some flexibility in the making of Medicaid eligibility determinations, Section 1396p(c)(1) requires that participating states recognize a period of ineligibility for benefits for individuals who transfer assets for less than fair market value during a specified look-back time period.  Mertz ex rel. Mertz v. Houstoun, 155 F. Supp. 2d 415, 419 (E.D. Pa. 2001).  If an asset is transferred during the look-back period, the applicant is subject to a "penalty period," which is a period of ineligibility calculated by dividing the uncompensated amount of the asset transferred by the average monthly cost of nursing home care in the particular state.  Johnson v. Guhl, 91 F. Supp. 2d 754, 762 (D.N.J. 2000); see Michael Feinberg, Medicaid After OBRA '93 As It Impacts on Long–Term Care Planning, 164 N.J. Lawyer 24 (October, 1994).  The State of Rhode Island Department of Human Services Policy Manual ("DHS Policy Manual") requires a period of ineligibility when a life estate in real estate is transferred by an otherwise eligible individual within the look-back period for less than fair market value.  DHS Policy Manual § 0384.35, https://www.policy.dhs.ri.gov/0300.htm (last

4

visited Nov. 8, 2013). To value the transferred life estate and calculate the period of ineligibility, the Rhode Island regulations mandate use of the Life Estate Table. Id. § 0382.55.10.

## II. FACTUAL AND PROCEDURAL HISTORY[2]

Mrs. Pike was a life-long resident of Block Island. At the age of 93, in August 2011, she transferred her life estate in Block Island real estate valued at $1,194,700 to her granddaughter. ECF No. 4-1 at 7. The purpose of the transfer, according to the Amended Complaint, was to permit the granddaughter, herself a disabled Marine veteran, to raise funds by mortgaging the real estate to keep her disabled father (Mrs. Pike's son and Plaintiff Pike's brother) in an assisted living facility. ECF No. 2 ¶¶ 1-2, ECF No. 4-1 at 5-6. Roughly contemporaneously with the transfer of her interest in the Block Island real estate,[3] Mrs. Pike applied for long term care Medicaid benefits under Title XIX. ECF No. 2 ¶ 1.

Meanwhile, during 2011, Mrs. Pike was hospitalized several times and discharged each time to the Nursing Home. ECF No. 2 ¶¶ 1, 3; ECF No. 4-1 at 3. While some of the Nursing Home expenses following each of these hospitalizations were covered by Medicare, many apparently were not. On December 21, 2011, DHS issued its Letter of Denial with respect to Mrs. Pike's eligibility for long term care under the Rhode Island Medicaid program because she had received no compensation for the life estate in the Block Island real estate that had been transferred to her granddaughter. ECF N. 4-1 at 2. Using the Life Estate Table as required by

---

[2] These facts are derived from the Amended Complaint and Gorman's RI DHS Decision, Docket # 12-5 (Apr. 25, 2013), ECF No. 4-1 ("DHS Decision"), which is referred to in the Amended Complaint. This Court may consider the DHS Decision on a motion to dismiss both because it is "sufficiently referred to in the complaint" and because it amounts to "official public records." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); see Barkan v. Dunkin' Donuts, Inc., 520 F. Supp. 2d 333, 336 (D.R.I. 2007).

[3] The Amended Complaint is seriously deficient in clarity, leaving the Court to speculate about some of the facts. For example, the timing of Mrs. Pike's application for long term care benefits under Rhode Island Medicaid in relation to the transfer of the life estate is omitted. Nevertheless, a fair inference may be drawn that she applied sometime in 2011 at the age of 93.

the DHS Policy Manual § 0382.55.10, DHS found that the life estate Mrs. Pike gave away was worth $294,995.32 so that she was deemed ineligible for long term care benefits for more than thirty-seven months. ECF No. 4-1 at 2, 7. On December 27, 2011, Mrs. Pike died. ECF No. 4-1 at 6. Her son, the plaintiff in this action, is her executor. ECF No. 2 ¶ 15.

Pike appealed from the Medicaid denial by DHS and requested an administrative hearing, which was held on December 20, 2012. Before Hearing Officer Gorman, Pike argued that the value of Mrs. Pike's life estate in the Block Island property was improperly calculated by reliance on the irrational assumption that Mrs. Pike would live to be 116; he also contended that one or more of the undue hardship exceptions in the DHS Policy Manual § 0384.45.05 should apply as a result of the granddaughter's status as a disabled veteran and because the purpose of the transfer was for the benefit of Mrs. Pike's disabled son, so that the transfer penalty period should be set aside.[4] Gorman permitted Pike to file a post-hearing brief and held the record open through March 8, 2013, to allow DHS Office of Legal Counsel to review it. ECF No. 4-1 at 6. Senior Legal Counsel submitted a memorandum to Gorman advising that Pike's submission would not cause DHS to alter its resource transfer evaluation; Pike contends that he was not sent a copy of this memorandum or allowed an opportunity to rebut it. ECF No. 2 ¶ 38; ECF No. 4-1 at 6-7.

On April 25, 2013, Gorman issued the DHS Decision affirming the determination that the uncompensated life estate transfer rendered Mrs. Pike ineligible for long term care benefits and that none of the undue hardship exceptions applied – the record does not reveal when this DHS Decision was mailed to Pike. Pike filed a motion for reconsideration or clarification with DHS, but received no response. ECF No. 2 ¶ 14. Pike did not file a complaint in the Rhode Island

---

[4] Ironically, the Rhode Island Medicaid Regulations would appear to provide for an "undue hardship exception" if Mrs. Pike had transferred the life estate to her disabled son instead of to her disabled granddaughter. DHS Policy Manual § 0384.35.

Superior Court appealing the decision within thirty days of the mailing date of the DHS decision pursuant to R.I. Gen. Laws § 42-35-15. Instead, he initiated this federal action on May 29, 2013; he contends, without presenting documentary proof, that he deposited the complaint in the mail on May 25, 2013, from Block Island, so that it was "filed" within thirty days of the date of the decision.

### III.   THE SECRETARY'S MOTION TO DISMISS

#### A. Lack of Federal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

The Secretary argues that Pike's claim against her – his fourth claim for relief – should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) based on this Court's lack of subject matter jurisdiction because Pike failed to allege an injury in fact. I agree. Pike's Medicare-based claim against the Secretary is less than skimpy: it alleges merely that "[i]t is unclear whether the 100 days of skilled nursing care [the Medicare coverage period] . . . was fully paid." ECF No. 2 ¶ 33. It also refers obliquely to "a Medicare claim, which falls under the Vermont class action for skilled nursing services." ECF No. 2 ¶ 35.

Briefing and argument on these motions has clarified what Pike means by "Vermont class action" – this is a reference to Jimmo, 2011 WL 5104355, a class action brought by Medicare claimants challenging the "Improvement Standard," which required the denial of claims of patients in failing health if the beneficiary was stable or not improving. Id. at *1-2. The Jimmo court denied the Secretary's motion to dismiss, holding that exhaustion of administrative remedies would be futile in the face of the Improvement Standard and unnecessary where the plaintiffs alleged procedural violations caused by the taint of the Improvement Standard. Id. at *8-9. A year later, Jimmo settled; after a fairness hearing, the class-wide settlement was approved and final judgment entered. Jimmo ECF No. 92. The settlement agreement created a class of Medicare beneficiaries who received skilled nursing services that were billed and denied

7

based on the Improvement Standard any time between January 18, 2011, and the end of an education period estimated to be sometime in early 2014.  See id. ECF No. 82-1 ¶ XI.  In consideration for release of all claims based on the Improvement Standard, class members were granted the right to seek administrative "re-review" of such claims.  Id.  While far from clear in his pleading, Pike appears to argue that it is conceivable that some of Mrs. Pike's Medicare claims for skilled nursing services might have been denied and that, if any claim was denied, it is also conceivable that the denial was based on improper application of the Improvement Standard, so that he might be entitled to recover as a class member under Jimmo.

Federal courts have jurisdiction to hear and determine only cases or controversies.  U.S. Const. Art. III, § 2.  They are "without power to decide questions that cannot affect the rights of litigants in the case before them."  North Carolina v. Rice, 404 U.S. 244, 246 (1971).  Standing is a threshold question, requiring the court to determine "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant invocation of federal-court jurisdiction."  McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003) (citations omitted).  "[T]he irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The first is that the plaintiff "must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (citations omitted).  Second, "there must be a causal connection between the injury and the conduct complained of." Id. (citations omitted).  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (citations omitted).  Pike's claims against the Secretary do not satisfy the first and third prerequisites for standing because he does not identify any concrete, particularized and actual injury.

When a claim is based solely on conjecture and requires the kind of hypothetical speculation that the Supreme Court has prohibited, it must be dismissed for lack of jurisdiction. Amidax Trading Grp. v. S.W.I.F.T. SCRL, 607 F. Supp. 2d 500, 508-09 (S.D.N.Y. 2009), aff'd, 671 F.3d 140 (2d Cir. 2011). Standing is not an "ingenious academic exercise in the conceivable." Katz v. Pershing, LLC, 672 F.3d 64, 80 (1st Cir. 2012) (quoting United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 688-89 (1973)). Pike has failed to allege any legal rights or interests that have been harmed by actions of the Secretary. Rather, his claim against the Secretary is based on the conceivable and is entirely tentative in tone. Moreover, to the extent that Pike is a member of the Jimmo class, he may be entitled to seek re-review under the settlement agreement, but he is barred by the Jimmo release from pursuing a Jimmo claim in federal court. Based on Lujan, I recommend that the claims against the Secretary (fourth claim for relief) be dismissed for lack of subject matter jurisdiction because of Pike's failure to allege an injury in fact.[5] 504 U.S. at 560; see Scallop Shell Nursing & Rehab. v. Gaffett, No. CA 13-471 ML, 2013 WL 5592736, at *4 (D.R.I. Oct. 10, 2013) (speculative Medicare claims dismissed because of failure to allege injury in fact).

### B. Failure to State a Claim on which Relief can be Granted Pursuant to Fed. R. Civ. P. 12(b)(6)

The Secretary argues that Pike's fourth claim for relief should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Pike has not provided any facts that support a claim for relief. This argument is well founded. A complaint must contain "sufficient factual matter, accepted as

---

[5] The Secretary also argues that, if Pike's pleading is construed as a challenge to an adverse Medicare determination, his failure to exhaust his administrative remedies requires dismissal. See Heckler v. Ringer, 466 U.S. 602, 614 (1984) (requiring administrative exhaustion for Medicare claims). The argument is based on section 405(h) of Title 42, made applicable to the Medicare program by 42 U.S.C. § 1395ii, which is the sole avenue for review of Medicare claims. 42 U.S.C. §§ 405(h), 1395ii; Mathews v. Eldridge, 424 U.S. 319, 328 (1976). I recommend that the Court not reach this argument both because Pike's pleading cannot be interpreted as alleging any adverse Medicare determination and because, with no subject matter jurisdiction over the claim against the Secretary, there is no need to decide whether exhaustion is required.

9

true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Amended Complaint's only claim against the Secretary is based on speculation that Mrs. Pike might have been entitled to Medicare benefits that were not paid. Because Pike has failed to state a claim against the Secretary upon which relief can be granted, I recommend that it be dismissed. See A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 82 (1st Cir. 2013) ("[t]he superficiality of the causation allegation, coupled with the speculative nature of the claim as a whole, makes manifest that the plaintiffs have failed to plead a plausible cause of action").

## IV. GORMAN'S MOTION TO DISMISS

Pike's § 1983 claims against Gorman based on the adverse Medicaid determination in the DHS Decision require a more complex analysis. Pike's first and third claims for relief contend that DHS's use of the Life Estate Table to value Mrs. Pike's life estate, rendering her ineligible for Medicaid, was a state action lacking any rational basis that constituted the improper use of a conclusive presumption that she would live to be 116, violating her rights to due process and contrary to the intent of the federal Medicaid (Title XIX) laws. His fifth claim alleges a due process deprivation because DHS legal counsel provided Gorman a memorandum without serving a copy on Pike or allowing him an opportunity to respond. In light of these federal claims, Pike's second claim asks this Court to exercise supplemental jurisdiction over his state law appeal from the administrative decision of the hearing officer under the Rhode Island Administrative Procedures Act, R.I. Gen. Laws § 42-35-15. He seeks prospective declaratory and injunctive relief, as well as an order directing DHS to reimburse the Nursing Home.

Gorman's motion to dismiss challenges for failure to state a claim Pike's first and third claims, which allege that the use of the Life Estate Table inflicted a constitutional deprivation redressable under Section 1983 because it irrationally results in the irrebuttable presumption that

10

Mrs. Pike would live to be 116. While Gorman incorrectly argues that these claims should be dismissed because Pike's pleading lacks any reference to a violation of federal law, Gorman's Fed. R. Civ. P. 12(b)(6) argument is nevertheless well founded in that Pike's pleading in these claims lays out a cause of action that utterly lacks plausibility because it is both factually flawed and legally wrong.

The foundation for Pike's irrational presumption claim is the mistaken proposition that the Life Estate Table[6] used by DHS is actually a life expectancy table,[7] which it is not; rather, it is simply a method for valuation of a life estate. See 49 Fed. Reg. 93 (May 11, 1984). Section 0382.15.35.05 of the DHS Policy Manual does refer to a life expectancy table to be used in valuing annuities. That table yields a life expectancy for Mrs. Pike of 3.84 years, which is substantially similar to the life expectancy of 3.61 years for which Pike advocated at the DHS hearing, eviscerating his irrationality argument. ECF No. 4-1 at 8. See Top Flight Entm't, Ltd. v. Schuette, 729 F.3d 623, 633 (6th Cir. 2013) (plaintiff's cause of action dismissed when allegation plainly contradicted by controlling law); Irons, LLC v. Brandes, 275 F. App'x 18 (D.C. Cir. 2008) (per curiam) (court not required to accept as true complaint's factual allegations that are contradicted by matters subject to judicial notice).

Pike's legal argument regarding the unconstitutionality of an irrebuttable presumption is equally unfounded. In 1969, the Supreme Court held that "a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact

---

[6] In use since 1984, the Life Estate Table has repeatedly been found reasonable. See, e.g., In re Giordano, 905 N.Y.S.2d 462, 464-65 (2010) (use of Life Estate Table to value interest of 95-year-old person not "absurd" but appropriate method to value life estate); Cook v. Ohio Dep't of Job & Family Servs., No. 02CA22, 2003 WL 21500165, at *4-5 (Ohio Ct. App. June 24, 2003) (in light of difficulty of valuing life estate, not unreasonable for state to use Life Estate Table).

[7] To calculate 116, Pike applied the factor in the Life Estate Table for a 93-year-old (.24692) to Mrs. Pike's age. Because the factor does not represent the percentage of life remaining for a 93-year-old, this calculation unsurprisingly led to an irrational result.

presumed." Leary v. United States, 395 U.S. 6, 32-33 (1969) (quoting United States v. Gainey, 380 U.S. 63, 67 (1965)); see Vlandis v. Kline, 412 U.S. 441, 452 (1973) (due process prohibits irrebuttable presumption that is not necessarily true in fact). These cases represented the high water mark for this short-lived principle. By 1989, the Supreme Court had shifted, holding that the irrebuttable presumption of an inaccurate fact does not violate procedural due process and offends substantive due process only if it results in a classification that adversely affects a recognized liberty interest. Michael H. v. Gerald D., 491 U.S. 110, 121-24 (1989) (Scalia, J) (plurality op.).

The calculation methodology used to value Mrs. Pike's life estate, which Rhode Island uniformly applies to all Medicaid applicants, does not adversely affect any recognized liberty interest that could give rise to a substantive due process violation. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) (Due Process Clause generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests); Guhl, 91 F. Supp. 2d at 773-74 (no suspect class or fundamental rights implicated by claim that plaintiffs unfairly denied Medicaid eligibility; due process and equal protection claims dismissed). Rather, it is rationally related to a legitimate state purpose: preventing the use of scarce public funds when patients have assets available to pay for skilled nursing care that are transferred to attempt to qualify for governmental subsidies. See B & G Const. Co., Inc. v. Dir., Office of Workers' Comp. Programs, 662 F.3d 233, 254 (3d Cir. 2011) (when legislature employs irrebuttable presumption, question is not one of procedural fairness, but whether plaintiff demonstrates that inference is not rationally related to legitimate legislative classification); Lovilia Coal Co. v. Harvey, 109 F.3d 445, 454 (8th Cir. 1997) ("An irrebuttable, or conclusive presumption . . . foreclose[s] the person against whom it is invoked from

demonstrating, in a particularized proceeding, that applying the presumption to him will in fact not further the lawful governmental policy the presumption is designed to effectuate.").

Based on these glaring legal flaws, I recommend that Pike's claim based on a due process deprivation arising from the use of a supposedly irrational irrebuttable presumption should be dismissed for failure to state a claim. Itzel Garcia-Catalan v. United States, No. 12-1907, 2013 WL 5878960, at *2 (1st Cir. Nov. 4, 2013) (court must determine whether factual allegations are sufficient to support reasonable inference that defendant is liable for alleged misconduct) (quoting Iqbal, 556 U.S. at 678). Further, because Pike does not point to any provision of Title XIX that is violated by the use of the Life Estate Table, I also recommend that his claim that its use is inconsistent with the intent of the federal Medicaid laws should be dismissed. [8]

Gorman has also asked this Court to dismiss all of Pike's claims under Fed. R. Civ. P. 12(b)(6) based on his failure to name as a defendant a state official subject to suit for these claims. I consider these arguments next.

First, Gorman correctly points out that Pike's claim is based on 42 U.S.C. § 1983, yet he has named the DHS hearing officer in his official capacity, rendering his damages claim subject to dismissal under Will v. Michigan Department of State Police. 491 U.S. 58, 71 (1989) (state officials acting in their official capacity not persons under § 1983); but see Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 237 (1st Cir. 2002) (Medicaid beneficiaries may bring § 1983 action

---

[8] Dismissal of this claim does not dispose of Pike's entire case against Gorman. He still has the potentially viable due process claim that the hearing officer improperly considered a memorandum from the DHS Senior Legal Counsel to which he was not permitted access. Maine Care Servs., Inc. v. U.S. Dep't of Agric., CIV. 00-358-P-H, 2001 WL 1399516, at *10-14 (D. Me. Nov. 9, 2001) (to determine whether proceeding in which *ex parte* communications occurred must be vacated on due process grounds court must examine whether integrity of process and fairness of result were irrevocably tainted by communications); see Arnold v. Lebel, 941 A.2d 813, 820-22 (R.I. 2007) (DHS hearing officers prohibited from *ex parte* communications by Rhode Island Administrative Procedures Act). This claim is potentially sufficiently potent to sustain supplemental federal jurisdiction over his state law claim based on the hearing officer's rejection of his hardship arguments. See Int'l Coll. of Surgeons v. City of Chicago, 522 U.S. 156, 172-73 (1997) (federal court may exercise supplemental jurisdiction over state agency appeal).

against state official seeking prospective relief); Guhl, 91 F. Supp. 2d at 771 (Medicaid claim for money damages dismissed, but claim for injunctive and declaratory relief survives).  Relatedly, Gorman contends that the state official Pike sued, an administrative hearing officer, is immune from suit because he was acting in a judicial capacity.  Guzman-Rivera v. Lucena-Zabala, 642 F.3d 92, 99 (1st Cir. 2011) (because board had power to adjudicate suspension of accountant's license, members protected by judicial immunity); Johnson v. Bd. of Bar Overseers of Mass., 324 F. Supp. 2d 276, 286-87 (1st Cir. 2004) (hearing officer entitled to immunity for acts within scope of adjudicative duties); see Richardson v. R.I. Dep't of Educ., 947 A.2d 253, 257-58 (R.I. 2008) (hearing officer shielded from suit by quasi-judicial immunity).

These arguments are well founded.  The claims against Gorman, in their entirety, are subject to dismissal based on Gorman's judicial immunity, while the damages claims are subject to dismissal under Will.  Because it is possible that Pike can cure this defect, I recommend that he be allowed thirty days from the Court's adoption of this report and recommendation to file a second amended complaint that properly names a defendant who is a "person" under Section 1983 and is not protected by either the Eleventh Amendment or judicial immunity.  If he fails to do so, I recommend that the claims against Gorman be dismissed without prejudice.

Gorman's next argument for dismissal is based on Pike's failure to exhaust administrative remedies because he did not appeal from the adverse decision of the hearing officer to Superior Court within thirty days of the mailing of the DHS Decision as required by R.I. Gen. Laws § 42-35-12.  Rivera v. Emps. Ret. Sys. of R.I., 70 A.3d 905, 911 (R.I. 2013) (thirty-day period for filing complaint in Superior Court begins to run the day after notice is mailed).  Gorman contends that the initiation of an appeal in federal court on May 29, 2013, is insufficient as a matter of law.

This argument – that a Medicaid applicant's decision to take his appeal to federal rather than state court is fatal mandating dismissal – is unsupported by the case law. See, e.g., BNSF Ry. Co. v. O'Dea, 572 F.3d 785, 788 (9th Cir. 2009) (state cannot confer rights on private parties and confine litigation to state courts); Guhl, 91 F. Supp. 2d at 774 (availability of state administrative procedures ordinarily does not foreclose resort to § 1983). DHS's argument that the federal suit is untimely is similarly flawed on this record: R.I. Gen. Laws § 42-35-12 requires that the appeal be initiated within thirty days of mailing, but the record is silent regarding when the DHS Decision was mailed. Moreover, Pike contends that his complaint was placed in the mail for filing in the federal court on the thirtieth day, which may be timely under Rhode Island law. See R.I. Gen. Laws § 9-1-12; R.I. Super. Ct. R. Civ. P. 3 (civil action may be commenced by depositing complaint in mail addressed to clerk); but see Carbone v. Planning Bd. of Appeal, 702 A.2d 386, 388 (R.I. 1997) (Rule 3 of Superior Court Rules of Civil Procedure not applicable to filing of complaint appealing from decision of zoning board of review).

In recognition of the serious flaws in his exhaustion argument, Gorman supplemented his motion to dismiss with a more serious argument: that this Court should abstain pursuant to the Younger abstention doctrine. See Younger v. Harris, 401 U.S. 37 (1971).[9] Citing cases from the Eighth Circuit and elsewhere, but not the First Circuit, Gorman contends that Younger abstention mandates a stay of Pike's Medicaid claims because there is an unexhausted state judicial proceeding that implicates important state interests and affords an adequate opportunity to raise the federal questions. See, e.g., Hudson v. Campbell, 663 F.3d 985, 988 (8th Cir. 2012) (Younger abstention appropriate to allow state appellate remedies based on Medicaid denial to

---

[9] Gorman made the abstention argument for the first time at argument. I permitted both Pike and Gorman to supplement the record with cases for and against the abstention. While DHS complied, Pike asked for two additional weeks to address the issue. This request was granted on September 26, 2013. However, Pike did not avail himself of this opportunity, and has filed nothing regarding abstention.

be exhausted despite lack of pending state proceeding due to plaintiff's election of federal forum); Columbus Rehab. & Subacute Inst. v. Franklin Cnty. Dep't. of Job & Family Servs., No. 2:08-cv-103, 2008 WL 5273924, at *4-5 (S.D. Ohio Dec. 17, 2008) (Younger abstention appropriate while state Medicaid proceeding ongoing due to important state interests implicated); Hays v. Concannon, No. 87-1362-MA, 1989 WL 222435, at *4 (D. Or. Mar. 20, 1989) (even if plaintiffs' constitutional challenge to Medicaid Act could not be heard at administrative level, Younger abstention appropriate because claims could be raised in Oregon Court of Appeals through state administrative review process).

In Hudson, the Eighth Circuit held that the traditional coercive/remedial distinction should not be outcome determinative under Younger, so that when important state Medicaid interests militated in favor of Younger abstention, the district court properly abstained. Id. at 987. The fact that the Hudson Medicaid claimant had abandoned the state procedure and opted to proceed in federal court was not an impediment: "a party cannot avoid Younger by choosing not to pursue available state appellate remedies." Alleghany Corp. v. McCartney, 896 F.2d 1138, 1144 (8th Cir. 1990). By contrast with the important state interest test articulated by the Eighth Circuit in Hudson, in this Circuit as in several other Circuits, courts have consistently held that Younger abstention is appropriate only when the state proceeding is "coercive" in nature, and not "remedial." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 522 (1st Cir. 2009). The cases applying this dichotomy routinely classify Medicaid proceedings as "remedial," holding that Younger abstention should not be invoked when a Medicaid applicant appeals a denial of eligibility in federal court. See id. at 522; Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 71 (1st Cir. 2005); see also Brown ex rel. Brown v. Day, 555 F.3d 882, 892 (10th Cir. 2009).

This split among the Circuits has made its way to the United States Supreme Court. See Sprint Commc'ns Co., L.P. v. Jacobs, 690 F.3d 864 (8th Cir. 2012), cert. granted, 133 S. Ct. 1805 (U.S. Apr. 15, 2013) (No. 12-815). Argument was heard on November 5, 2013. The question presented to the Supreme Court is "[w]hether the Eighth Circuit erred by concluding, in conflict with decisions of nine other circuits and this Court, that Younger abstention is warranted not only where there is a related state proceeding that is 'coercive' but also when there is a related state proceeding that is, instead, 'remedial.'" Sprint Commc'ns Co., L.P. v. Jacobs, Pet. for Writ of Cert., 2013 WL 51971, at *i (U.S. Jan. 2, 2013) (No. 12-815). Currently, the majority rule, which is that Younger abstention is appropriate only when the proceedings is "coercive," is clearly applied in the First, Sixth, Seventh and Tenth Circuits and "apparently so" in the Second, Third, Fourth, Ninth and Eleventh Circuits. Id. at *16.

Here, First Circuit precedent prohibits Younger abstention because the proceeding at hand is remedial, not coercive. See Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 260 (1st Cir. 1987). However, if the principle articulated by the Eighth Circuit is adopted by the Supreme Court, this Court should abstain from proceeding with Pike's claim. See Sprint Commc'ns Co., L.P., 690 F.3d at 868. With the pivotal question of law pending before the United States Supreme Court, to the extent that Pike's claims survive the other flaws identified in this report and recommendation, I recommend that this Court stay all claims arising from Mrs. Pike's ineligibility for Rhode Island Medicaid until the Supreme Court renders its decision. See Paradee v. Consumer Portfolio Servs., Inc., 344 F. Supp. 2d 823, 833 (D.R.I. 2004) (court has inherent discretionary authority to stay cases when appropriate); Morales Feliciano v. Hernandez Colon, 775 F. Supp. 487, 489 (D.P.R. 1991) (decisions on defendants' appeal postponed pending decision by Supreme Court on matter raising similar issues).

Summing up, to untangle Pike's Medicaid pleading and respond to Gorman's motion to dismiss, I recommend that Pike's claim based on an irrational irrebuttable presumption arising from Gorman's use of the Life Estate Table be dismissed for failure to state a claim. I further recommend that Pike be given thirty days from the adoption of this report and recommendation to amend his Amended Complaint to cure his failure to name a viable defendant. If he fails to do so, I recommend that Pike's damages claim be dismissed without prejudice because a state official acting in his official capacity is not a "person" under § 1983 and that Pike's claims for injunctive and declaratory relief be dismissed without prejudice because Gorman is protected from suit based on the doctrine of judicial immunity. To the extent that Pike successfully amends his Amended Complaint, I recommend that this Court stay the matter pending the decision by the U.S. Supreme Court in Sprint Communications Co., L.P. v. Jacobs, 133 S. Ct. 1805 (2013), so that it can determine whether the Younger abstention doctrine mandates that this Court stay further proceedings until Pike's Medicaid claim has been prosecuted through the state courts.

V.    CLAIMS AGAINST THE NURSING HOME

Pike's fourth claim for relief somewhat flimsily asserts that the Nursing Home has not advised him of "the claimed amount," presumably the amount owed to the Nursing Home based on Mrs. Pike's skilled nursing care; he also claims that it did not comply with "minimum fiduciary obligations to obtain all reasonable reimbursement from the federal government." ECF No. 2 ¶¶ 34, 35. He asks this Court to direct DHS to reimburse the Nursing Home. Pike's hazy pleading does not articulate how these allegations give rise to a claim that properly falls within this Court's federal question or supplemental jurisdiction. For present purposes, however, the Court should address the reality that, in the more than five months since the Complaint was filed,

Pike has not filed proof of service on the Nursing Home, nor has the Nursing Home appeared or responded to the Amended Complaint. It did not appear at the argument on these motions. During argument, Pike's counsel represented to the Court that, "I've been in cooperation with the attorney for the Nursing Home. He says he's been too busy. I said I wouldn't pursue a default against him. He's been served." However, no stipulation extending time has been filed as required by DRI LR Cv 29. Pike's claim against the Nursing Home seems to be drifting in limbo.

> Federal Rule of Civil Procedure 4(m) provides:
>
> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice. . . . But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Based on Rule 4(m), I *sua sponte* recommend that Pike be given thirty days from the Court's adoption of this report and recommendation to file his proof of service or justify his failure by a demonstration of good cause. If he does not do so and provided that the Nursing Home does not appear in this suit within the same thirty-day period, I recommend that all of Pike's claims against the Nursing Home be dismissed without prejudice.

## VI.     CONCLUSION

Based on the lack of federal subject matter jurisdiction and Pike's failure to state a claim upon which relief can be granted, I recommend that the Secretary's motion to dismiss (ECF No. 6) be granted.

As to Gorman's motion to dismiss (ECF No. 4), I recommend that it be granted in part and denied in part as follows. I recommend that Pike's claims based on an irrational irrebuttable presumption arising from Gorman's use of the Life Estate Table be dismissed for failure to state a claim. I further recommend that Pike be given thirty days from the adoption of this report and

recommendation to amend his Amended Complaint to cure his failure to name a viable defendant.  If he fails to do so, I recommend that Pike's damages claim and claims for injunctive and declaratory relief be dismissed without prejudice.  To the extent that Pike successfully amends his Amended Complaint, I recommend that this Court stay further proceedings pending the decision by the U.S. Supreme Court in Sprint Communications Co., L.P. v. Jacobs, 133 S.Ct. 1805 (2013), so that it can determine whether the Younger abstention doctrine mandates that Pike's Medicaid claim be stayed.

As to the claims against South County Health and Rehabilitation Center, Inc., I *sua sponte* recommend that Pike be given thirty days from the Court's adoption of this report and recommendation to file his proof of service or justify his failure by a demonstration of good cause.  If he does not do so and provided that South County Health and Rehabilitation Center, Inc., does not appear in this suit within the same thirty-day period, I recommend that all of Pike's claims against it be dismissed without prejudice.

Any objections to this report and recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days after the date of service.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 13, 2013