UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| F. NORRIS PIKE, ex rel. ESTATE OF CLAIRE S. PIKE, <br> Plaintiff, <br><br> v. <br><br> KATHLEEN SEBELIUS, as Secretary of Department of Health and Human Services, STEVEN A. CONSTANTINO, Secretary of Rhode Island Department of Human Services, and SOUTH COUNTY HEALTH AND REHABILITATION CENTER, INC., <br> Defendants. | : <br> : <br> : <br> : <br> : C.A. No. 13-392S <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

This case is back for a second round of challenges to Plaintiff F. Norris Pike's ("Pike") complaint seeking Medicaid reimbursement for his mother Claire S. Pike's ("Mrs. Pike") final nursing home stay. In round one ("Pike I"),[1] the District Court dismissed all claims in Pike's Amended Complaint against Defendant Kathleen Sebelius ("Sebelius") and all of the claims against Defendant Rhode Island Department of Human Services ("DHS"), with leave to replead as to some. Pike responded with a Second Amended Complaint that restated all of the same claims, salted with additional asseverations, and substituted Steven M. Costantino,[2] Secretary of the Rhode Island Department of Health and Human Services, for Hearing Officer Michael Gorman as the defendant representative of DHS. Unsurprisingly, the Second Amended Complaint led to another wave of dispositive motions.

---

[1] Pike I consists of my prior report and recommendation and the District Court's Opinion and Order adopting it in part. Pike ex rel. Estate of Pike v. Sebelius, CA 13-392S, 2013 WL 6991481 (D.R.I. Nov. 13, 2013), report and recommendation adopted in part, rejected in part, 2014 WL 172508 (D.R.I. Jan. 13, 2014).

[2] Pike misspelled Secretary Costantino's name in his case caption. I use the correct spelling.

The District Court ruled quickly on most of the issues raised by these motions, dismissing the Counts of the Second Amended Complaint that are materially identical to those already dismissed by Pike I. Before me now for report and recommendation is whether the remaining claims against DHS (Counts 2 and 5)[3] should be dismissed. For the reasons that follow, I recommend that DHS's motion be granted in that all remaining federal claims should be dismissed with prejudice. I further recommend that the Court decline supplemental jurisdiction over the remaining state law claims[4] and that they too be dismissed, without prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

This case has a complicated factual[5] and legal background, fully described in Pike I. In brief, in 1994, Mrs. Pike conveyed two ancestral properties on Block Island to her son Frederick N. Pike ("Frederick," Pike's brother[6]), retaining a life estate in both properties. Frederick is a mentally and physically disabled military veteran; to pay for his care, in 2011, the Pike family decided to mortgage the two properties to raise funds to renovate them for rental income. This plan was impeded by the bad credit of both Mrs. Pike and Frederick. Accordingly, in August 2011, Mrs. Pike (then 93 years old) and her son Frederick each transferred their interests in the properties without compensation to Melissa Pike ("Melissa," Frederick's daughter), herself a

---

[3] Pike labels his claims as "First Claim for Relief," and so on. For clarity, I refer to them as Counts. By way of illustration, I refer to the "First Claim for Relief" as "Count 1."

[4] With good reason Pike has not invoked diversity jurisdiction: the amount in dispute is roughly $37,000 and Pike and at least one defendant, the Nursing Home, both appear to be domiciled in Rhode Island. See 28 U.S.C. § 1332 (diversity jurisdiction requires amount in controversy above $75,000); Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005) (§ 1332 requires complete diversity between plaintiffs and defendants).

[5] These facts are derived from Pike's Second Amended Complaint; because this is a motion to dismiss, I take as true all well-pleaded factual allegations and afford Pike the benefit of all reasonable inferences. Butler v. Balolia, 736 F.3d 609, 612 (1st Cir. 2013). I also consider the DHS Administrative Decision – as this Court observed in Pike I, it may be considered on a motion to dismiss both because it is "sufficiently referred to in the complaint" and because it amounts to an official public record. Pike I, 2013 WL 6991481, at *2 n.2.

[6] To avoid confusion, I will refer to Frederick N. Pike as "Frederick" and to his brother, Plaintiff F. Norris Pike, as "Pike."

disabled Marine veteran, so that she could apply for the mortgages. After the transfers, Mrs. Pike was hospitalized several times and discharged to Defendant South County Nursing and Rehabilitation Center, Inc. (the "Nursing Home"). On December 27, 2011, she passed away at the Nursing Home.

Because Medicare would not cover all of Mrs. Pike's Nursing Home bills, she had applied for long term care Medicaid benefits to make up the difference. DHS denied the application, reasoning that the uncompensated transfer of her two life estates to Melissa less than five months before her death made her ineligible for Medicaid for thirty-seven months based on its valuation of the life estates at $294,995.32. As a result of this denial, by the time of her death, Mrs. Pike had incurred approximately $37,000 in Nursing Home bills not covered by Medicare or Medicaid. Pike had personally guaranteed these obligations and sought administrative relief.

After the adverse administrative decision by DHS's Hearing Officer Gorman, Pike filed this suit, naming as defendants Secretary Sebelius of the United States Department of Health and Human Services, DHS's Hearing Officer Gorman and the Nursing Home. Sebelius and Gorman both moved to dismiss the Amended Complaint. The resulting report and recommendation recommended that all claims against Sebelius (set out in Count 4) be dismissed either for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). Pike I, 2013 WL 6991481, at *5, *6-7. It also recommended that all claims against DHS (Counts 1, 2, 3 and 5) be dismissed; specifically, it recommended dismissal of Counts 1 and 3 based on failure to state a claim and of Counts 2 and 5 based on the judicial immunity of Hearing Officer Gorman, with leave to file an amended complaint naming a viable DHS defendant. Id., at *7. Without a viable defendant, the report and recommendation did not address either the merits of Count 5, which claimed that Gorman's receipt of an *ex parte* memorandum violated Pike's due

process rights, or whether the Court should exercise supplemental jurisdiction over the state law claims against DHS in Count 2.[7] Id., at *7 n.8.

No party objected to the Pike I report and recommendation. On January 13, 2014, Chief Judge Smith issued an Order that largely adopted it,[8] dismissing all claims against Sebelius and DHS, with thirty days to amend Counts 2 and 5 by naming a viable DHS defendant. ECF No. 22. On February 10, 2014, Pike filed his Second Amended Complaint, which substituted Secretary Costantino for Hearing Officer Gorman as the new DHS defendant. In addition, the Second Amended Complaint restated all of the dismissed claims against Sebelius, spiced up with references to a "new" Medicare claim and more detail regarding his claim based on Jimmo v. Sebelius, No.5:11-cv-17, 2011 WL 5104355 (D. Vt. Oct. 25, 2011). Similarly, the Second Amended Complaint restated the dismissed claims against DHS based on the use of the Life Estate Tables, also with an infusion of new material.[9] After DHS and Secretary Sebelius filed new motions challenging the Second Amended Complaint, Chief Judge Smith swiftly issued

---

[7] As discussed infra, Plaintiff's newest argument is that Count 2 is not just a state law claim, but also arises under federal law.

[8] Pike I also recommended that the Court stay further proceedings pending the decision of the United States Supreme Court in Sprint Communications Co. v. Jacobs, 133 S. Ct. 1805 (2013), and that the Court dismiss Pike's claims against the Nursing Home unless Pike filed proof of service. Pike I, 2013 WL 6991481, at *10. Both of these recommendations were rendered moot: the Supreme Court's subsequent decision in Sprint established that Younger abstention is not applicable to this case and Pike filed proof of service on the Nursing Home, which has since answered the Amended Complaint.

[9] Pike claims he did not object to the Pike I report and recommendation, instead filing a Second Amended Complaint restating the dismissed claims dressed up with additional allegations, because he understood all of the Pike I dismissals to be without prejudice leaving him free to relitigate them despite all of their legal defects. ECF No. 28-1 at 1. His premise is incorrect. A dismissal order based on Fed. R. Civ. P. 12(b)(6), the basis for dismissal of all claims against Sebelius and of Counts 1 and 3 against DHS, is with prejudice unless the order explicitly states otherwise – here, Pike I dismissed without prejudice only his claims against DHS in Counts 2 and 5. See, e.g., Adames v. Fagundo, 198 F. App'x 20, 21 (1st Cir. 2006) (per curiam); Papas v. Baines, 981 F.2d 1245 (1st Cir. 1992). Further, while the alternative dismissal of the claims against Sebelius based on lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is without prejudice, a new action is barred as long as subject matter jurisdiction remains lacking. See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008); Scallop Shell Nursing & Rehab. v. Gaffett, CA 13-471 ML, 2013 WL 5592736, at *7 (D.R.I. Oct. 10, 2013).

4

another Opinion and Order that pared away the do-over claims against Sebelius[10] and DHS based on the Life Estate Tables.[11] ECF No. 31. That left pending only Counts 2 and 5 against DHS and the portions of Count 4, which had been clarified by the amendment to state claims against the Nursing Home. The Opinion and Order charged me to take up "for a further Report and Recommendation the issue of whether [DHS] is entitled to dismissal of Counts 2 and 5." Id.

## II.  STANDARD OF REVIEW

Rule 12(b)(6) permits this Court to dismiss an action for failure to state a claim upon which relief can be granted. See Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (citing Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and allege a plausible entitlement to relief.[12] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007). A plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating a Rule 12(b)(6) motion, the

---

[10] Because Sebelius was entirely dismissed from the case by Pike I, Pike's attempt to sue a non-party through an amendment was a futile exercise. Even if she had still been a party, Chief Judge Smith correctly dismissed Pike's restated claims against her despite the newly added reference to "more recent [Medicare] decisions" because the new material adds nothing beyond more conjecture and hypothetical speculation. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Equally unavailing is Pike's addition of more argument about the class action settlement in Jimmo v. Sebelius, No.5:11-cv-17, 2011 WL 5104355 (D. Vt. Oct. 25, 2011); his new argument has no effect on this Court's determination that he is barred by the Jimmo release from pursuing a Jimmo claim against Sebelius in this case. Pike I, 2013 WL 6991481, at *5.

[11] Chief Judge Smith properly rejected Pike's attempt to revive his claim against DHS based on the Life Estate Tables by attaching a 254-page publication of the United States Office of Management and Budget ("OMB"). ECF No. 23-1 (reproducing Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, 78 Fed. Reg. 78590-01 (Dec. 26, 2013)). These OMB regulations have nothing to do with the valuation of a life estate interest in real estate to determine Medicaid eligibility; indeed, they specifically do "not change or modify any existing statute or guidance otherwise based on any existing statute." 78 Fed. Reg. 78590-01, 78590. Pike's characterization of them in the Second Amended Complaint is misleading and wrong.

[12] Without explaining the basis for his argument (since this case was filed in federal court and purportedly arises under federal law), Pike contends that this Court should use the more liberal state court pleading standard, instead of Twombly/Iqbal. This contention will not be considered further – this Court is duty bound to apply Twombly/Iqbal.

Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor. Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555 (court is "not bound to accept as true a legal conclusion couched as a factual allegation").

### III. DISCUSSION

In the discussion that follows, I focus first on DHS's argument that Secretary Costantino is not a proper defendant. Next, I address the viability of Pike's federal claims, beginning with Count 5, a § 1983 claim, and then considering Count 2, which is now alleged to arise under both state and federal law. Finally, I discuss the exercise of supplemental jurisdiction over the remaining state law claims in Count 2 and the Nursing Home claim in Count 4, together with the related state law counterclaim.

#### A. Secretary Costantino as Named DHS Defendant

DHS aggressively contends that Pike's federal claims in Counts 2 and 5 still fail because the Second Amended Complaint adds no meat to the bone – Secretary Costantino is simply carroted into the caption and named in paragraph 15 as the Secretary of DHS. There are no factual allegations against him in his individual capacity and no allegations sufficient to impose supervisory liability; accordingly, DHS argues, all claims against him based on § 1983 must be dismissed.[13]

DHS overlooks the clarification in the Second Amended Complaint that the only relief sought against DHS is declaratory and injunctive – Pike is not looking for a damage award. It is

---

[13] DHS does not address whether the Secretary is the appropriate defendant on the administrative appeal from the adverse decision by DHS, which Pike has incorporated into Count 2. Accordingly, I do not consider that as a potential defect in the pleading.

well settled that a state official may be sued under § 1983 for prospective relief in his or her official capacity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989). Further, while Pike's pleading is certainly skimpy, dismissal on this ground with leave to replead would likely be an empty exercise in light of the many cases that treat the head of the relevant social services agency as the correct defendant for a challenge to state Medicaid regulations under federal law. See, e.g., Townsend v. Swank, 404 U.S. 282 (1971); Goldberg v. Kelly, 397 U.S. 254 (1970). For example, a complaint alleging that, in his official capacity, Secretary Costantino is vested with the authority to "coordinate the administration [of] . . . the Medicaid State Plan," R.I. Gen. Laws § 42.7.2-5(a), and to promulgate related regulations, R.I. Gen. Laws § 42.7.2-11, might be all that is needed plausibly to make him the appropriate defendant. DHS conceded as much at the hearing.

Accordingly, while the pleading remains deficient (compelling an alternative recommendation giving Pike another chance to cure), I step past this technical defect in Pike's federal claims against Secretary Costantino to examine whether they are really federal claims at all.

### B. Due Process Allegations in Count 5

Count 5 tersely alleges that DHS violated § 1983 because the "process of the [administrative DHS] hearing denies what was due in general, and in particular in not including the Medicare issues[14] and in having a Memorandum by Senior Agency Counsel to be presented

---

[14] Pike clarified at the hearing that this reference to "Medicare issues" is based on his theory that DHS violated due process by declining to consider whether Mrs. Pike should have qualified for Medicare. If such a theory were articulated in the Second Amended Complaint, it would fail as a matter of law. Section 405(h) of Title 42, made applicable to the Medicare program by 42 U.S.C. § 1395ii, is the sole avenue for review of Medicare claims. 42 U.S.C. §§ 405(h), 1395ii. A Medicare claimant must first "present" the claim to the United States Department of Health and Human Services and exhaust all administrative remedies before a court can exercise jurisdiction over it. Mathews v. Eldridge, 424 U.S. 319, 328 (1976); Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 285 (5th Cir.1999) (per curiam). DHS has no role or statutory authority to adjudicate a Medicare claim and it is not a denial of due process for it not to determine or prosecute Pike's Medicare claims. See Clayton Cnty., GA, 436

without a copy of opposing counsel or opportunity for rebuttal." ECF No. 23 ¶ 40. DHS's Administrative Decision supplies additional details. It states that, because Pike submitted a post-hearing brief, DHS held the record "open . . . to allow the agency Office of Legal Counsel to review the 'Brief in Support of Claim' submitted by the appellant's representative post hearing." ECF No. 24-1 at 7. Based on this review, the DHS Office of Legal Counsel advised the Hearing Officer in a memorandum that Pike's new submission did not affect the life estate valuation position taken by the agency during the hearing:

> [A] memorandum [was then submitted] . . . from the agency Senior Legal Counsel. The memo states that the agency Legal Counsel has reviewed the additional information submitted post-hearing by the appellant's representative. The memorandum states that following review of the additional information in this matter the agency is not persuaded to modify its prior resource transfer evaluation.

Id. at 8. At the hearing, Pike confirmed that his due process claim in Count 5 is based on DHS's failure to serve this memorandum on him or to allow him an opportunity to rebut it.

Failing to serve a brief on an opposing party is not a *per se* violation of the Due Process Clause; rather, the claimant must point to specific prejudice caused by the failure to serve. Grieco v. Meachum, 533 F.2d 713, 719 (1st Cir. 1976). The legal memorandum in Pike's cross-hairs is a post-hearing submission that responded to Pike's own post-hearing brief. At that point in the administrative hearing, Pike had already been afforded all the trappings of due process, including notice, full briefing and an in-person hearing where he made arguments and presented witnesses. Pike claims he was not given an opportunity to rebut the memorandum, but DHS's administrative hearing procedures do not afford the right to submit a post-hearing reply brief. See DHS Code of Rules § 110, Complaint and Hearings, available at http://sos.ri.gov/documents/

---

F. App'x 904, 913 (11th Cir. 2011) (no due process violation when claimant has no legal right to process); Beary Landscaping, Inc. v. Ludwig, 479 F. Supp. 2d 857, 878 (N.D. Ill. 2007) (no due process claim when adequate procedures for relief exist).

archives/regdocs/released/pdf/DHS/7419.pdf (last visited Sept. 15, 2014). Pike has not pointed to any authority (and this Court could find none) suggesting that the Due Process Clause guarantees the right to submit a reply brief after submission of a full merits brief. More importantly, the Court is also able to glean no prejudice, and Pike does not articulate any, from the Hearing Officer's receipt of a memorandum that merely indicates that DHS's Office of Legal Counsel would not alter its position (as articulated at the hearing when Pike had a full opportunity to respond) in light of Pike's post-hearing submission. Absent facts that plausibly establish prejudice, the submission of the post-hearing memorandum without serving Pike or affording him an opportunity to reply is not a due process violation. Grieco v. Meachum, 533 F.2d 713, 719 (1st Cir. 1976).

Pike's alternative due process theory is equally lacking in plausibility – he contends that the post-hearing memorandum's reference that "the agency is not persuaded to modify its prior resource transfer evaluation" permits the inference that DHS was biased by an improper *ex parte* contact with the Office of Legal Services at an earlier stage of the proceeding. There are no factual allegations in the Second Amended Complaint to support this inference. Consultation within an agency on legal matters does not support an inference of improper *ex parte* contact. See Grillo v. Coughlin, 31 F.3d 53, 58 (2d Cir. 1994) (permissible for one hearing officer to consult with another on legal matter); accord Arnold v. Lebel, 941 A.2d 813, 820-22 (R.I. 2007) (under Rhode Island Administrative Procedures Act, hearing officer may not communicate internally on litigious facts, but may inquire about general matters). To the contrary, Rhode Island's regulations on hardship waiver determinations specifically authorize DHS to consult

with its Office of Legal Services.[15]  See R.I. Admin. Code § 39-3:0384.45 ("The LTC Administrator or his/her designee, in consultation with the Office of Legal Services determines whether undue hardship applies."). It is illogical and entirely speculative to posit that the "prior" evaluation was the result of an improper *ex parte* contact that produced bias against Pike. See Pike I, 2013 WL 6991481, at *5 (plaintiff must plead more than speculation).

Count 5 of the Second Amended Complaint against DHS should be dismissed in its entirety for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

### C. Federal Question in Count 2[16]

Based on Frederick's (the son) and Melissa's (the granddaughter) status as disabled veterans, Count 2 alleges that DHS should have applied the Medicaid hardship exemption to find that Mrs. Pike's uncompensated transfer of two life estates to her granddaughter did not render her ineligible for Medicaid reimbursement. Count 2 states: "[w]hile the Rhode Island regulations are muddled, there are both specific and general standards for hardship [and] . . . [i]n light of the constitutional claims, there is no choice but to avoid this issue and find hardship to eliminate eligibility." ECF No. 23 ¶ 26. Despite this ambiguous allusion to "constitutional claims" throughout Pike I, this claim was consistently characterized as an administrative appeal from the adverse DHS determination, hence arising under state law. For the first time, at the hearing on this motion to dismiss, Pike argued that Count 2 also arises under federal law, which he contends

---

[15] The Administrative Decision itself notes that the case was referred to the DHS Office of Legal Counsel because it raised a novel legal issue: Mrs. Pike's life estate transfer to her granddaughter involved two life estates and contiguous parcels instead of the usual situation involving only one life estate for one parcel. ECF No. 24-1 at 3.

[16] Based on collateral estoppel and *res judicata*, DHS continues to argue that Count 2 is barred because Pike's administrative appeal was filed in federal court instead of the Rhode Island Superior Court. ECF No. 24 at 18-21. This argument was rejected in Pike I; if DHS disagreed, it should have objected to the Pike I report and recommendation. See Crespo v. Sec'y of HHS, 915 F.2d 1556, at *1 (1st Cir. 1990) (per curiam) (failure to object in a timely fashion to magistrate judge's report and recommendation constitutes waiver). It will not be further considered here.

mandates that DHS must exempt Mrs. Pike's transfer based on hardship under these circumstances. This theory fails because nothing in the federal Medicaid Act, 42 U.S.C. § 1393, *et seq.*, or the applicable federal regulations imposes such a requirement.

In establishing a joint state-federal funding program for medical assistance pursuant to the Spending Clause, the federal Medicaid Act compels the states to draft Medicaid plans in conformity with federal law. 42 U.S.C. § 1396, *et seq.*; Alexander v. Choate, 469 U.S. 287, 290 (1985). When a State drafts a plan that is not in conformity with federal law, and the plan leads to the denial of Medicaid benefits, a Medicaid claimant may have grounds to plead a federal question.[17] James ex rel. James v. Richman, 465 F. Supp. 2d 395, 400-01 (M.D. Pa. 2006); see, e.g., Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171 (10th Cir. 2009) (analyzing several specific provisions of the Medicaid law, finding that some are cognizable under § 1983 and others are not); 5 West's Fed. Admin. Prac. § 6325 ("Although the Medicaid Act does not provide for a private right of action, plaintiffs have [sometimes] been successful in bringing a private cause of action under 42 U.S.C.A. § 1983.").

In 2005, Congress passed the Deficit Reduction Act, which penalizes Medicaid claimants for making asset transfers with no consideration (with the goal of becoming impoverished to qualify for Medicaid) unless the transfer is made to a spouse, disabled child, or a child caring for the claimant at home for at least two years. 42 U.S.C. § 1396p(c)(1)(J)(2). An uncompensated property transfer to a grandchild, as in this case, causes the claimant to lose Medicaid eligibility for a period of time, unless the claimant would suffer an "undue hardship." Id.; Johnson v. Guhl, 357 F.3d 403, 411 (3d Cir. 2004). The Medicaid Act does not define "undue hardship" – rather,

---

[17] The availability of a private right of action is not automatic. "[T]he typical remedy for state noncompliance [in Spending Clause cases] with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 183 (3d Cir. 2004) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 28 (1981)).

11

it leaves the states free to "establish procedures." 42 U.S.C. § 1396p(b)(3)(A); W. Virginia v. Thompson, 475 F.3d 204, 207 (4th Cir. 2007). The only requirement is that each state propose its plan for implementing the hardship exemption to the Secretary of Health and Human Services, who has delegated review to the Administrator of the Centers for Medicare & Medicaid Services ("CMS") to "determin[e] whether proposed state plans and plan amendments meet federal Medicaid requirements." Id. at 208 (if state's hardship exemption plan complies with federal law, CMS "shall approve"). Thus, hardship provisions "need not be uniform . . . [and states] have flexibility in implementing an undue hardship provision." Id. Consistent with leaving each state free to fashion its own implementation, CMS's regulation adds only the requirement that the state's plan must be clear that "[u]ndue hardship exists when application of the trust provisions would deprive the individual of medical care such that his/her health or his/her life would be endangered [or] when application of the trust provisions would deprive the individual of food, clothing, shelter, or other necessities of life." § 3259.8 of HCFA Transmittal No. 64; see Guhl, 357 F.3d at 411.

In compliance with the Medicaid Act and the CMS regulation, DHS has promulgated a regulation setting out the parameters for Rhode Island's hardship exemption. It provides that the penalty for transferring assets "shall be waived" when:

1) Imposition of the penalty period would deprive the individual of medical care to the extent that his/her life or health would be endangered or would deprive the individual of food, shelter, clothing or other necessities of life; and

2) All appropriate attempts to retrieve the transferred asset have been exhausted; and

3) The nursing facility has notified the individual of its intent to initiate discharge or the agency providing essential services under a home and community based waiver has notified the individual of its intent to discontinue such services for reasons of non-payment; and

12

> 4) No less costly non-institutional alternative is available to meet the individual's needs.

R.I. Admin. Code § 39-3:0384.45. In addition, "[u]ndue hardship does not exist when application of the transfer provisions merely causes inconvenience or restricts lifestyle but would not put him/her at risk of serious deprivation." Id.

Against this backdrop, it is plain that Count 2 has nothing to do with whether DHS has complied with federal law. It alleges simply that a property transfer to a disabled grandchild, who is also a military veteran, should qualify for the hardship exemption. It is devoid of any plausible allegation that DHS's determination not to award a hardship waiver in such a circumstance violates federal law in any way. Compare Guhl, 357 F.3d at 411, with R.I. Admin. Code § 39-3:0384.45. To the contrary, both the Second Amended Complaint and the Administrative Decision make clear that Mrs. Pike "passed away at the [N]ursing [H]ome," ECF No. 24-1 at 7, rendering implausible any claim that Mrs. Pike was deprived of shelter or medical care such that she must qualify for a hardship exemption. Count 2 of the Second Amended Complaint contains no factual support for the allegation that DHS acted outside the bounds of the Medicaid Act or the CMS regulation, never mind whether there would be a private right of action if it had. Accordingly, while Count 2 challenges DHS's administrative decision not to apply the hardship exemption, it does not plead a federal question.

### D. Supplemental Jurisdiction over State Law Claims

The state law claim against DHS (Count 2) is the appeal from the adverse administrative agency decision. The state law claim against the Nursing Home (part of Count 4) is the allegation that it was negligent in its handling of Mrs. Pike's medical bills. In addition, the Nursing Home has asserted state law counterclaims against Pike for breach of contract, promissory estoppel, unjust enrichment, necessaries and obligation for kindred support pursuant

13

to R.I. Gen. Laws § 40-5-13. ECF No. 25. With no federal questions remaining, this Court must determine whether to exercise supplemental jurisdiction over these state law causes of action. See 28 U.S.C. § 1367.

"[T]he termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction, but, rather, sets the stage for an exercise of the court's informed discretion." Senra v. Town of Smithfield, 715 F.3d 34, 41 (1st Cir. 2013). In deciding whether to exercise supplemental jurisdiction in such a circumstance, the Court "must take into account concerns of comity, judicial economy, convenience, fairness, and the like." Id. "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Rivera-Diaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 392 (1st Cir. 2014) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)). In the end, the decision is "pragmatic and case-specific." Delgado v. Pawtucket Police Dep't, 668 F.3d 42, 48 (1st Cir. 2012).

Here, the balance of factors tips overwhelmingly towards declining supplemental jurisdiction based on considerations of comity, judicial economy, convenience and fairness. This proceeding remains at the pleading stage and has not proceeded to discovery, eliminating any risk that the parties will duplicate work already performed here if Pike re-files in state court. See Rivera-Diaz, 748 F.3d at 392. Although DHS urges this Court to dispose of Pike's administrative appeal on the merits,[18] both comity and judicial economy favor the state court,

---

[18] DHS's argument that this Court should dispose now of Pike's administrative appeal on the merits would require a detailed review of the administrative record (which neither party has filed with this Court) and, likely, consideration of the state law principles regarding supplementation of the record on a Medicaid appeal. At the pleading stage, such an argument is not well founded; I recommend that this aspect of DHS's motion be denied without prejudice to its right to bring the same argument after submission of the certified record in the state court. See generally Tierney v. Dep't of Human Servs., 793 A.2d 210 (R.I. 2002); Lapointe v. R.I. Dep't of Human Servs., 2013 WL 1852969 (R.I. Super. Ct. Apr. 26, 2013).

14

which is better situated to resolve administrative appeals of Medicaid denials. See, e.g., Novak v. Ind. Family & Soc. Servs. Admin., 1:10-CV-677-RLY, 2012 WL 676179, at *1-2 (S.D. Ind. Feb. 29, 2012) (declining to invoke supplemental jurisdiction over state agency Medicaid denial); Mid-Delta Home Health, Inc. v. Miss. Div. of Medicaid, 499CV030-EMB, 2000 WL 870802, at *3 (N.D. Miss. June 7, 2000) (no supplemental jurisdiction over state Medicaid claims). Further, the state court is the more appropriate forum to resolve whether Pike's mailing of his complaint from Block Island on the thirtieth day constituted a timely appeal of DHS's administrative decision to deny the hardship exemption. See 28 U.S.C. § 1367(c)(1) (district court may decline supplemental jurisdiction if claim raises a complex issue of state law); Pike I, 2013 WL 699148, at *8 (observing that whether Pike's mailing of the complaint on the thirtieth day of the appeal period is timely is unresolved question under state law). Relatedly, the Nursing Home's counterclaims are more conveniently litigated in state court because they are intertwined with DHS's denial of the hardship exemption.

In sum, I recommend that the state law claims against DHS in Count 2 and against the Nursing Home in Count 4, together with the related counterclaims, should be dismissed without prejudice to refiling them in state court. As long as they are filed within thirty days after the federal court declines supplemental jurisdiction, 28 U.S.C. § 1367(d) tolls the statute of limitations. Brown v. City of Boston, 98 F.3d 1333 (1st Cir. 1996).

### IV.   CONCLUSION

Based on the foregoing, I recommend that DHS's motion to dismiss (ECF No. 24) all federal law claims asserted in Count 2 and all claims asserted in Count 5 of the Second Amended Complaint be granted and that they be dismissed with prejudice. I further recommend that DHS's motion to dismiss the state law claim in Count 2 with prejudice and on the merits be denied as premature, but I also recommend that this Court decline to exercise supplemental

jurisdiction over it, and therefore recommend that DHS's motion to dismiss Count 2 of the Second Amended Complaint be granted without prejudice to refiling it in state court. In addition, I *sua sponte* recommend that this Court also decline to exercise supplemental jurisdiction over the Second Amended Complaint's state law claims in Count 4 against the Nursing Home and the Nursing Home's counterclaims, and that they be dismissed without prejudice to refiling in the state court. Finally, and in the alternative, I recommend that this Court grant DHS's motion to dismiss all federal law claims in Counts 2 and 5 without prejudice because Pike still fails adequately to name an appropriate defendant, with leave to file a curative third amended complaint within thirty days of this Court's adoption of this report and recommendation.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 16, 2014